## LIEBERTHAL v. GLENS FALLS INDEMNITY CO.

### No. 9566.

United States Court of Appeals
Seventh Circuit.

May 25, 1949.

Glenn R. Dougherty, Suel O. Arnold, Milwaukee, Wisconsin, Dougherty, Arnold & Waters, Milwaukee, Wisconsin, for appellant.

Arthur Wickham, Milwaukee, Wisconsin, S. W. Patek, Ironwood, Michigan, for appellee.

Before MAJOR, Chief Judge, and KERNER and MINTON, Circuit Judges.

KERNER, Circuit Judge.

Defendant appeals from a judgment entered upon a jury verdict for damages incurred by plaintiff through the negligence of a taxicab driver. The jury found the

driver guilty of negligence, and awarded plaintiff $323.50 for medical and hospital expenses, $1,200 for pain and suffering, and $2,500 for loss of earnings, or a total of $4,023.50. No question is raised on the issue of the driver's negligence.

Plaintiff, a resident of Ironwood, Michigan, engaged in the real estate and insurance business, on the evening of June 5, 1944, boarded a taxicab in Waukesha, Wisconsin. As the driver drove off, some one from the office of the Cab Company yelled to the driver, who, without looking to the rear, applied his brakes and reversed the direction of his cab rapidly. He backed two or three car lengths and struck another automobile which was approaching from the opposite direction.

■■ There is no serious dispute as to the amount that plaintiff expended for medical and hospital expenses, and the amount which plaintiff could be awarded for his pain and suffering is a matter which rests very largely in the discretion of the jury. Phillips v. Saecker, 204 Wis. 273, 234 N.W. 745. In the federal system appellate courts do not normally review the verdict of the jury, but only the acts of the judge. Home Ins. Co. v. Tydal, Co., 5 Cir., 152 F.2d 309, and Buchanan v. Chicago & N.W. Ry. Co., 7 Cir., 159 F.2d 576, 578. And since we have reached the conclusion that the jury's assessment of plaintiff's medical and hospital expenses and the award for pain and suffering should not be disturbed, we proceed to discuss defendant's contention that the verdict for loss of earnings was not warranted by the evidence.

On this issue the proofs were that for 25 years plaintiff had been engaged in the real estate business and that the bulk of his income was earned in the spring of the year; that his business consisted in the sale of all kinds of real estate, the most profitable type being the sale of lake frontage and farms located 60 or 70 miles from Ironwood; that after the accident, because of his injuries, pain and lack of sleep, he was unable to do his office work properly and had to spend $140 a month additional to run his office; that in 1944 his earnings were $5,102, in 1945, $2,716, and in 1946, $2,829; that in 1945 and 1946 there was a great increase in the demand for resort and farm property, caused by the return of many veterans, and that plaintiff's business would have been increased accordingly had he been able to take care of it. There was no evidence, however, that plaintiff had lost any particular sales. During the trial, defendant objected to the evidence concerning plaintiff's earnings on the ground that it was immaterial. In this court, the contention is that such evidence was speculative and insufficient to sustain the verdict.

■ In Wisconsin the loss of profits or earnings is a proper measure of damages, but the evidence must furnish some basis upon which the profits may be computed with reasonable certainty, Paramount Fuel Co. v. Fuerst, 199 Wis. 188, 225 N.W. 727, and past profits of an established business constitute a legitimate basis upon which to estimate the future profits of the same business, conducted in the same manner, which may be recovered when a plaintiff has been prevented from making them by the wrongful conduct of the defendant. Huebner v. Huebner, 163 Wis. 166, 157 N.W. 765. All that is required is to establish such matters to a reasonable certainty. If more were required in judicially assessing damages, many wrongs would go unrighted. Forster, Waterbury Co. v. F. MacKinnon Mfg. Co., 130 Wis. 281, 291, 110 N.W. 226. Of course, a jury may not render a verdict based on speculation or guess work, but it may make a just and reasonable estimate based on relevant data and render its verdict accordingly. Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264, 66 S.Ct. 574, 90 L. Ed. 652. See also Eastman Kodak Co. v. Southern Photo Materials Co., 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684, and Package Closure Corp. v. Sealright Co., 2 Cir., 141 F.2d 972, 979. It is not necessary that the jury should arrive at a conclusion with mathematical certainty. Buxbaum v. G. H. P. Cigar Co., 188 Wis. 389, 393, 206 N. W. 59.

■ Before concluding this phase of the case, we note that after the close of all the evidence defendant moved to strike all of plaintiff's evidence with respect to loss of earnings, and the point is made that such damages were by the complaint fixed at $500. The trial judge, however, was of the

opinion that the $500 limit applied only to damages in the future. We perceive no error in the court's ruling. True, the complaint did allege that plaintiff "was and will be prevented from receiving and earning his customary earnings, profits and benefits from said business, to his further damage in the sum of to-wit, Five Hundred Dollars ($500.00)," but a plain reading of the complaint discloses that the amount claimed for plaintiff's injuries was $5,000.

The court instructed the jury that in determining the loss of earnings, if any, suffered by plaintiff as a result of his injuries, such loss of earnings must be proved to a reasonable certainty; that they were not permitted to speculate as to whether any such damages occurred; that if they became satisfied to a reasonable certainty by a preponderance of the evidence that the plaintiff had suffered a loss of earnings in the past as a natural and proximate result of his injury, they should make a reasonable compensation therefor; and if they were likewise convinced by the evidence that plaintiff would suffer any loss in the future as a natural and proximate result of his injuries, they should likewise fix reasonable compensation therefor, but that as to any future damages for loss of earnings they could not exceed $500, because plaintiff himself had fixed that amount in his sworn complaint. Upon this record, we think no error was committed in denying defendant's motion for a directed verdict and in overruling defendant's motion to strike all of plaintiff's evidence with respect to loss of earnings.

Defendant next contends that there is no competent medical testimony that plaintiff suffered injuries as the result of the accident. The argument is that the testimony of the medical witnesses was speculative and conjectural, and failed to establish to a reasonable certainty that the accident was the probable or proximate cause of plaintiff's injuries.

It is undisputed that plaintiff was injured in the accident. The proof was that as a result of the collision his shoulders and the back of his neck were thrown against the back of the seat; that the back of his neck struck the top of the seat with a snap and he immediately felt a severe pain in his neck and shoulders; that since the accident he has suffered severe pains, is troubled with severe headaches, and has not been able to sleep well; that he never had this condition before the accident, and prior thereto, he was able to sleep like a top; and that on the morning following the accident he consulted a physician who continued to treat him for a few days, and then Dr. Lemuel D. Smith examined him on June 10, 1944.

Dr. Smith concluded that plaintiff had received a severe jar, but found no objective evidence of injury. Thereafter, plaintiff returned to his home and submitted to treatment by his brother, also a physician. After several weeks, the brother advised plaintiff to consult Dr. C. C. Urquhart, who treated plaintiff in the latter part of July or early in August, 1944, and prescribed some pills, a sedative, and heat lamp treatments. Plaintiff also visited Dr. Urquhart in December, 1944, in June, 1945, and in April, 1947. In the meantime, plaintiff was receiving lamp treatments and was taking tonics prescribed by his brother.

Dr. Urquhart testified that plaintiff complained of pain in the back of his neck and shoulders; that the only evidence which he could find consisted of plaintiff's statement that he suffered pain; and that there was nothing objective showing any injury, but that plaintiff's condition could be the result of the jarring of the head, neck and spine in the accident of June 5, 1944.

Dr. Ansfield testified that he examined plaintiff on November 16, 1947; that aside from the fact that plaintiff said he suffered pain, he could not find anything objective to indicate that plaintiff was in pain. It was his opinion that the accident produced a muscular and ligamentus sprain of the neck which caused a permanent disability. He further testified: "The nature of this man's injury is such that we frequently do not find objective evidence of trouble, particularly some time after an accident occurs. One may find it right after the accident or shortly after the accident but sometimes pain can persist where no other evidence of injury is visible, and we then have to correlate his complaints and his findings in order to ascertain whether the patient is telling the truth and whether his

complaints are of reasonable character. * * * I think it is important to call attention * * * to the fact that the patient made some subjective complaints which he would never have made if he did not have the pain, because unless one is a student of medicine or a physician he would not know enough to make certain complaints unless those complaints were actually present. I feel that although I wasn't able to find any objective evidence of trouble, Mr. Lieberthal had the pain because the complaints he made rang true during the physical examination."

The question whether the accident to plaintiff caused his injuries is one which a jury or court cannot properly determine without the aid of the testimony of experts, and while it is true that the conclusion of a physician must be to a reasonable certainty and that any other conclusion is merely speculative, Vogelsburg v. Mason & Hanger Co., 250 Wis. 242, 26 N.W.2d 678, yet evidence such as testified to by the physicians in this case was proper for the purpose of corroborating other evidence that the injuries sustained by plaintiff were caused by the accident of June 5, 1944. Bucher v. Wisconsin Central Ry. Co., 139 Wis. 597, 610, 120 N.W. 518.

In our case there is no question but what the jury was correctly instructed as to the law applicable to the facts. In such a situation, where it is undisputed that as a result of the collision plaintiff's shoulders and the back of his neck were thrown against the back of the seat of the taxicab—the back of his neck striking the top of the seat with a snap, that he immediately felt a severe pain in his neck and shoulders, and that he has since suffered severe pains, none of which symptoms predated the accident, we think what was said in Biever v. Szultek, 253 Wis. 134, 33 N.W.2d 246, is applicable. In that case, too, it was claimed that the case was governed by the decision of Vogelsburg v. Mason & Hanger Co., supra, but the court in disposing of defendant's contention 33 N.W.2d at page 248 said: "Under these circumstances the testimony of the doctor that the injury was capable of causing the impairment does not leave the matter of causation in a state of speculation and guess. We have here no choice of causes so far as the record discloses and the chain of evidence above detailed appears to us to support a jury conclusion that the loss of hearing was caused by the accident." We conclude that the verdict finds ample support in the evidence.

Several other questions are discussed in the briefs, all of which have been examined. They are not of sufficient significance to call for a special treatment. We find nothing in them calling for a reversal, hence the judgment of the District Court will be affirmed. It is so ordered.